In the Matter of Proving the Last Will and Testament of PATRICK DONOHUE, Deceased.

MARIA EGAN, as Executrix, etc., Appellant; ANNIE DONOHUE, Respondent.

First Department, January 13, 1922.

Wills — probate — devise by aged testator, leaving widow, of savings bank deposits to niece pursuant to previously expressed intention — lack of testamentary capacity not shown.

A will should not be refused probate for lack of testamentary capacity where it appears that the testator died at the age of seventy-eight years, fifteen months after the execution of the will, leaving a widow seventy-six years of age but no children; that the testator at the time of his death had savings bank deposits to the amount of $6,000 and his widow had deposits of twice that amount; that for five years before his death the testator left his bank books with his niece and on several occasions during said period expressed an intention to leave his savings bank deposits to her which he did; that at the time of the execution of the will he stated that his wife had more than enough to support herself and he wanted his money to go to the niece; that the sole testimony for the widow, who is contesting the will, was furnished by the family physician who testified that two or three days before the execution of the will the testator had delusions but there was no evidence that they were of such a nature as to affect his testamentary capacity, and that on the part of the proponent there were ten witnesses, including a doctor who had attended the testator and a priest who had visited him, all of whom testified that his acts and words impressed them as rational.

APPEAL by Maria Egan from an order of the Surrogate's Court of the county of New York, entered in the office of the clerk of said Surrogate's Court on or about the 11th day of June, 1921, denying a motion to set aside the verdict and findings of a jury and for a new trial, and also from a decree entered in said clerk's office on or about the 1st day of July, 1921, refusing probate to the said last will and testament of Patrick Donohue, deceased, except so much thereof as allows the contestant and proponent certain sums as and for disbursements and costs as taxed.

*John S. Wise, Jr.*, for the appellant.

*William Dike Reed*, for the respondent.

SMITH, J.:

Patrick Donohue was about seventy-eight years old at his death in December, 1920. Annie Donohue, his widow, was seventy-six years old. They had two children who died in infancy. When he died he left two savings bank accounts amounting in the aggregate to $6,000. He left all of this to Maria Egan, a favorite niece. He had a residuary clause in his will leaving the rest of his property to his beloved wife. They had lived most economically in a very dingy tenement. At the time of his death his wife had savings bank deposits to the amount of $12,000. For five years prior to his death he had done no work and his wife for about that length of time had been confined to the house and sometimes to her bed, apparently with rheumatism. By an arrangement between them during the last six years he paid the rent of the rooms and she furnished the meals. This was all done out of the income from their savings bank deposits.

Donohue died of cancer of the stomach and had been afflicted for many years with that disease, so that he was only able to take liquid food. During the last years he vomited a great deal and spit up blood. Prior to the last five years he had worked for seventeen years in the water department, getting two dollars and fifty cents a day, and at that time he had supported the family. In the meantime, before the wife was taken sick she had worked out at washing and cleaning

and had accumulated her bank account, sixty per cent of which, however, was from interest added to deposits.

He made his will on October 2, 1919, about fifteen months prior to his death. He was then very sick and not expected to live. He stated at the time of making the will that his wife had more than enough to support herself for her life and he wanted his money to go to a favorite niece, Maria Egan, to whom he bequeathed his savings bank deposits. The sole testimony for the contestant is furnished by a Dr. Egan who was the family physician during all these times. He swears that two or three days before this will was made he called in a consulting physician, a Dr. Ferguson, who used a stethoscope for the purpose of examining the decedent's lungs and that the day after the consulting physician had been there the decedent complained to him that the doctor had left the stethoscope in his chest which had caused him much pain and caused him to lie awake all night. This was the first delusion that the deceased had and, as Dr. Egan swears, the first positive evidence of insanity. Afterwards and towards his death as he grew weaker he had other delusions as though there were automobiles in his bed and some other things. The deceased stated to the lawyer who drew the will and who was the attorney for a friend of the beneficiary, that he left nothing to his wife, because she had enough to live on for the rest of her life and he wanted these deposits to go to this favorite niece. He also stated to him that his wife had starved him and this caused his weakened condition. This was probably untrue, because he could only eat liquid food and the evidence satisfies me that he had all of that he wanted. For five years before his death he left his bank books with this niece who lived in Jersey City, getting them only when he drew his interest.

While Dr. Egan swears to this delusion about the stethoscope, he says also that the wife was present. The deposition of the wife was taken at her home and she swears to no facts indicating any delusion or any insanity on the part of the deceased. She is the one contesting the will. There is some evidence to the effect that he drank more or less and that this niece would bring some whisky to him. The evidence as to his drinking was confined to the testimony of Dr. Egan, and it appears that at the time of his death there was a flask of whisky found

upon the shelf which had been untouched and had remained there apparently for a considerable time. Whisky was an irritant to the decedent's condition and it is claimed by Dr. Egan that it was forbidden.

On the part of the contestant no other witnesses were called; Dr. Ferguson, who examined deceased with Dr. Egan three or four days prior to the making of the will, was not called as a witness or the failure to call him accounted for; no friends of the husband or wife or tenants of the building where these people resided for thirty years were called to testify to acts of the deceased. There is only the widow's testimony and that of Dr. Egan. She refers only once to the mental condition of the deceased when her attorney asked the question, " Was he rational during the last two illnesses? Was he peculiar in his mind? " She answered, " He was. He was." Dr. Egan mentions the stethoscope incident and the delusions concerning automobiles in the bed and, while he had plenty of opportunity to observe the deceased and makes the general statement that he was of unsound mind at the time of making the proposed will, his testimony gives evidence of considerable animosity to the niece beneficiary. There was no evidence on the part of the contestant that the deceased did not understand fully about his property and was able to attend to his business affairs, except that Dr. Egan gives it as his opinion that he was not sufficiently intelligent to remember what property he had or where he put it. There was no evidence that the delusions sworn to were of such a nature as to affect the capacity of the deceased to make a will.

On the part of the proponent there were ten witnesses who swore to visiting the deceased at his home or seeing him at the home of the niece in Jersey City both before and after the making of the will in question and who state what they saw him do and heard him say. He played cards, talked about current events and about old times in Ireland, he went to the savings banks and drew the interest on his deposits and he went unattended from his home in Twenty-eighth street, New York, to Jersey City, and these things happened both before and after the making of the will. These witnesses all swore that the acts and words of the decedent impressed them as rational. Included among these witnesses was a doctor who

had attended the deceased and given him medicine in New Jersey, and a priest of the contestant's parish who visited the deceased during his illness of 1919 and who swears he was rational. While these witnesses were nearly all of them either relatives or friends of the beneficiary niece, their testimony is very convincing that the deceased understood about his property, was able to take care of himself and his property and knew clearly what he wanted to do with his property, and we are of the opinion that the verdict of the jury to the contrary was against the weight of the evidence.

The deceased had, on several occasions during several years prior to making the will proposed, expressed an intention to leave the moneys he had in the savings banks to his niece. He had left the bank books representing those deposits with that niece for some years prior to his death, obtaining them from her when he desired to withdraw the interest items. Following this expressed intent, again expressed at the time, the deceased executed the will in question. As we said in *Matter of Eno* (196 App. Div. 131, 150): " The will was not the result of a sudden impulse but of a definite purpose " formed some considerable time before its execution. This purpose was formed by the deceased long before the illness of September, 1919, when Dr. Egan finds the first evidence of so-called insanity.

The decree appealed from should be reversed and a new trial ordered, with costs to appellant payable out of the estate.

CLARKE, P. J., DOWLING, PAGE and GREENBAUM, JJ., concur.

Decree reversed and new trial ordered, with costs to appellant payable out of the estate. Settle order on notice.